IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EXMAR MARINE, NV (Belgium)<br>De Gerlachekaai 20<br>2000 Antwerp<br>Belgium,<br><br>     *Plaintiff*,<br><br>v.<br><br>BUREAU OF INDUSTRY AND SECURITY<br>U.S. Department of Commerce<br>1401 Constitution Ave., NW<br>Washington, DC  20230,<br><br>**Serve**: Mr. Merrick B. Garland, Esq.<br>   U.S. Attorney General<br>   U.S. Department of Justice<br>   950 Pennsylvania Ave., N.W.<br>   Washington, D.C. 20530-0001<br><br>**Serve**: Mr. Matthew M. Graves, Esq.<br>   U.S. Attorney for the District of<br>   Columbia<br>   U.S. Attorney's Office<br>   555 4th St., N.W.<br>   Washington, D.C. 20530<br><br>**Serve**: Mr. Opher Shweiki, Esq.<br>   Acting Chief Counsel<br>   Office of Chief Counsel for Industry<br>   and Security<br>   U.S. Department of Commerce<br>   14th St. and Constitution Ave., N.W.<br>   Room H-3839<br>   Washington, D.C. 20230,<br><br>     *Defendant*. | Case No. 1:21-cv-3141 |

## VERIFIED COMPLAINT

Plaintiff Exmar Marine NV ("Exmar"), by counsel and pursuant to Rule 3 of the Federal

Rules of Civil Procedure, files this verified complaint against the Bureau of Industry and Security ("BIS"). For its complaint, Exmar states as follows:

## INTRODUCTION

1. Exmar, a Belgian company, is the beneficial owner of an IAI Ltd Gulfstream G280 aircraft (serial number 2039, United States registration number N280EX) (the "Aircraft"). The Aircraft is currently held in trust pursuant to federal aircraft registration law. The United States government, acting through the BIS, is currently prohibiting the sale of the Aircraft even though it has no authority to do so. The government has not even afforded Exmar any process (let alone due process) to obtain the government's permission to release the bill of sale. This is an action to compel the United States government to permit the sale of the Aircraft.

## PARTIES

2. Plaintiff Exmar Marine NV ("Exmar") is a Belgium company and a multi-disciplinary maritime and offshore solutions provider, designing, and delivering sustainable and efficient value chains for its customers worldwide for the production, storage, supply, and transportation of oil and gas. Exmar maintains its principal place of business at De Gerlachekaai 20, 2000 Antwerp, Belgium.

3. Defendant Bureau of Industry and Security ("BIS") is the agency of the United States Department of Commerce. BIS is charged with, among other things, enforcing the Export Administration Regulations. BIS is located at 1401 Constitution Ave., NW, Washington, DC.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Fourth and Fifth Amendments to the United States Constitution. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 2201 because

it involves a request for the declaration of legal rights in a justiciable case of actual controversy. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1346 because the United States government is the defendant.

5. The United States District Court for the District of Columbia is a proper venue pursuant to 28 U.S.C. § 1391 because it is the judicial district in which BIS is headquartered. It is also the judicial district in which a substantial part of the events or omissions giving rise to the claims against the defendant occurred.

## STATEMENT OF FACTS

I. Exmar's Registration of the Aircraft in the United States.

6. In support of its international business operations, Exmar operates the Aircraft between its various business locations in Antwerp, Belgium; Houston, Texas; Shanghai, China; Wanchai, Hong Kong; Paris, France; Singapore, Singapore; Luanda, Angola; London, United Kingdom; and Mumbai, India, as well as visiting its partners, (prospective) clients and subcontracts.

7. 49 U.S.C. § 44101-44102 and 14 C.F.R. § 47.7(c) enables a person to register an aircraft in a trust and maintain the aircraft on the United States Civil Aircraft Registry ("Registry").

8. Foreign citizens who hold legal title to an aircraft frequently place their aircraft in such trusts whose trustee is either a United States citizen or a resident alien. This type of trust is known as a Non-Citizen United States Trust ("NCT").

9. An NCT enables a foreign citizen to register its aircraft on the Registry. In addition to being a predicate to operating an aircraft in the United States, registering an aircraft in the United States has many advantageous commercial effects, such as maintaining favorable resale values and tax treatment, as well as limiting regulatory concerns regarding aircraft cross-border transfers.

10. The use of NCTs to register aircraft in the United States is a well-known and accepted practice by the FAA, U.S. Department of Commerce, and BIS. Thousands of non-U.S. citizens who operate aircraft for a wide variety of private and commercial operations currently use NCTs. All NCTs are thoroughly reviewed and approved by the FAA Aeronautical Center Counsel.

11. When Exmar acquired the Aircraft from Gulfstream Aerospace LP, it was financed under a five-year lease provided by Bank of America. The Aircraft was registered with the Federal Aviation Administration ("FAA") since 2014 under the ownership of Bank of America Leasing & Capital, LLC.

12. In 2019, the Aircraft was re-financed with GEFA Bank GmbH (part of the Société Générale Group) ("GEFA"). At that time, GEFA suggested that Exmar maintain the Aircraft registration with the FAA through a trust.

13. Exmar is a foreign citizen, so it registered the Aircraft on the Registry through the use of an NCT. Exmar identified Aircraft Guaranty Corporation Holdings ("AGC"), an American entity, as a qualified trustee to hold the Aircraft for registration in the United States. AGC was the trust that was proposed by GEFA.

14. In accordance with standard practice, Exmar entered into Continent Aircraft Statutory Trust No. 3163 (the "AGC Trust") with AGC for the registration of the Aircraft effective 28, 2020.

15. Under the AGC Trust, Exmar is the trustor and the beneficial owner of the Aircraft. AGC, a U.S. citizen, is the trustee of the AGC Trust.

16. The FAA reviewed and approved all relevant trust documents required by FAA regulations.

17. The Aircraft was properly registered on the Registry in February 2020.

4

18. Since the Aircraft's registration, Exmar has operated the Aircraft around the globe in support of its international business operations.

II. BIS Investigation of AGC and Unauthorized Prohibition on the Sale of the Aircraft.

19. As of February 2021, the AGC Trust held over 1,000 aircraft.

20. On or about February 24, 2021, the government unsealed the Third Superseding Indictment ("Indictment") alleging that AGC's principals and related individuals had engaged in illegal activities.

21. Neither Exmar nor the Aircraft is named at all in the Indictment.

22. Exmar first learned of the Indictment and AGC's alleged illegal activities on or about February 26, 2021.

23. After government unsealed the Indictment, BIS required all aircraft held in the AGC Trust to be "cleared" by it prior to any transfer in ownership out of the AGC Trust to another party.

24. Specifically, BIS prohibits the AGC Trust from releasing a bill of sale of an aircraft to a third party, which effectively prohibits any transfer transaction.

25. BIS has never provided any legal authority to support its prohibition on the sale of any aircraft, including the Aircraft, owned the AGC Trust.

26. Indeed, no legal authority exists under the current circumstances for BIS to prohibit the sale of any aircraft between private parties, including the Aircraft, simply because Exmar, the beneficial owner, placed the aircraft in the AGC Trust.

III. Exmar's Obstructed Efforts to Sell the Aircraft.

27. Exmar has been preparing to sell the Aircraft as part of its normal business operations since the beginning of the 2021. Exmar notified the government of its plans to sell the

Aircraft on March 19, 2021.

28. The government advised Exmar to file an Electronic Export Information ("EEI") in order to release the Aircraft from the AGC Trust.

29. Exmar complied with this guidance, filed the EEI, and obtained an internal transaction number ("ITN") of X20210519009134.

30. Exmar officially requested the release of the Aircraft from the AGC Trust by submitting all required documentation and information to BIS on May 19, 2021.

31. Since that time, Exmar has repeatedly contacted BIS to determine the status of the Aircraft's release from the AGC Trust. Exmar asserts that BIS does not have the right to refuse to permit the sale of the Aircraft.

32. BIS has either ignored the requests or simply responded that the Aircraft is still being processed. Most recently, on September 23, 2021, BIS simply stated that "[t]he aircraft has not been approved for release," meaning the AGC Trust still may not release the bill of sale back to Exmar, the beneficial owner or to a third party transferee.

33. As of the date of this filing, BIS has refused to permit the sale of the Aircraft out of the AGC Trust despite Exmar's compliance with the government's export guidance and continued cooperation. BIS' refusal to permit the sale of the Aircraft constitutes its assertion that it has the right to do.

34. BIS' actions have deprived Exmar (as the beneficial owner of the Aircraft) of its property rights in the Aircraft. Specifically, Exmar has been deprived of its right to free alienability of its Aircraft.

35. Moreover, at no point has BIS provided Exmar any opportunity to be heard on why the Aircraft should not be permitted to transfer ownership. BIS' actions have been without legal

authority and without any due process.

36. As a direct and proximate result of BIS' unlawful actions without due process, Exmar is suffering financial harm. That harm includes, but is not limited to, lost aircraft sales and the necessary incurrence of significant fixed and variable costs of maintaining the Aircraft. Furthermore, Exmar is likely to suffer greater financial harm if it loses its opportunity to sell the Aircraft due to the government's unauthorized prohibition on transfer of the Aircraft.

37. Exmar now invokes this Court's jurisdiction to issue a judgment declaring Exmar's right to free transferability of the Aircraft for which it is the beneficial owner, and to order BIS to permit release of the bill of sale of the Aircraft.

## COUNT I
(Violation of the Fourth Amendment to the United States Constitution)
(28 U.S.C. § 2201)

38. Exmar incorporates the allegations contained in paragraphs 1 through 37 herein.

39. The Fourth Amendment to the United States Constitution provides that the United States government, including BIS, may not seize property unreasonably and generally without a warrant.

40. Exmar, as beneficial owner of the Aircraft, has a property interest in the Aircraft. Specifically, Exmar has the right to freely transfer property of which it is a beneficial owner.

41. BIS has seized Exmar's property right of free alienability of the Aircraft by prohibiting release of the bill of sale of the Aircraft.

42. BIS does not have a warrant to seize the Aircraft. It does not have legal authority to prohibit the release of the bill of sale of the Aircraft. It is unreasonable to prohibit the release of the bill of sale of the Aircraft.

43. Accordingly, BIS has violated the Fourth Amendment to the United States

Constitution by seizing the property right of free transferability of the Aircraft.

44. Exmar has been damaged and continues to be damaged as a direct and proximate result of BIS' unconstitutional seizure.

45. Exmar has asserted that it has the right to sell the Aircraft and that BIS does not have the right to refuse to permit the sale of the Aircraft. Thus, there has been an actual assertion and denial of right.

WHEREFORE, Exmar respectfully requests the following declaratory and injunctive relief to remedy BIS' unconstitutional seizure of Exmar's property rights:

(a) This Court should declare BIS' prohibition to the release of the bill of sale for the Aircraft unconstitutional; and

(b) This Court should enjoin BIS to formally permit the release of the bill of sale of the Aircraft, thereby permitting exercise of the property right of free alienability; and

(c) This Court should award Exmar its reasonable attorneys' fees in an amount to be proven at the conclusion of this case.

## COUNT II
(Violation of the Fifth Amendment to the United States Constitution)
(28 U.S.C. § 2201)

46. Exmar incorporates the allegations contained in paragraphs 1 through 37 herein.

47. The Fifth Amendment to the United States Constitution provides that the United States government, including BIS, may not deprive any person of its property without due process of law.

48. Exmar, as beneficial owner of the Aircraft, has a property interest in the Aircraft. Specifically, Exmar has the right to freely transfer property of which it is a beneficial owner.

49. BIS has deprived Exmar's property right of free alienability of the Aircraft by

prohibiting release of the bill of sale of the Aircraft without any adjudication or process whatsoever.

50. Accordingly, BIS has violated the Fifth Amendment to the United States Constitution by depriving Exmar of its property right of free transferability of the Aircraft without due process.

51. Exmar has been damaged and continues to be damaged as a direct and proximate result of BIS' unconstitutional deprivation of Exmar's due process rights.

52. Exmar has asserted that it has the right to sell the Aircraft and that BIS does not have the right to refuse to permit the sale of the Aircraft. Thus, there has been an actual assertion and denial of right.

WHEREFORE, Exmar respectfully requests the following declaratory and injunctive relief to remedy BIS' unconstitutional deprivation of Exmar's property rights:

(a) This Court should declare BIS' prohibition to the release of the bill of sale for the Aircraft unconstitutional; and

(b) This Court should enjoin BIS to formally permit the release of the bill of sale of the Aircraft, thereby permitting exercise of the property right of free alienability; and

(c) This Court should award Exmar its reasonable attorneys' fees in an amount to be proven at the conclusion of this case.

## PRAYER FOR RELIEF

For the foregoing reasons, Exmar respectfully requests that this Court (1) ENTER JUDGMENT in favor of Exmar and against BIS for the relief claimed in Counts I and II, plus reasonable attorneys' fees (or any other amount to be determined in this action); and (2) AWARD Exmar any other relief this Court deems just and proper.

Dated: December 1, 2021　　　　　　　　　　Respectfully Submitted,

**EXMAR MARINE, NV**

**By Counsel**

*/s/ Anand Ramana*

---

Anand Ramana (D.C. Bar No. 489478)
VEDDER PRICE P.C.
1401 New York Ave N.W.
Suite 500
Washington, D.C. 20005
Tel: (202) 312-3325
E-mail: aramana@vedderprice.com
*Attorney for Plaintiff*

David Hernandez (D.C. Bar No. 473952)
Catherine Johnson (D.C. Bar No. 1672362)
VEDDER PRICE P.C.
1401 New York Ave, N.W.
Suite 500
Washington, D.C. 20005
Tel: (202) 312-3367
dhernandez@vedderrice.com
cjohnson@vedderprice.com
*Attorneys for Plaintiff*

10

## VERIFICATION

I, Christine Verhaert, am a Director and authorized agent for the plaintiff in the above-captioned action. I am of sound mind and body to make this verification. I have read the foregoing verified complaint, fully understand the factual allegations, and understand the legal claims I am asserting in this action. I verify under penalty of perjury that the foregoing is true and correct.

Executed on November 30, 2021

_____
Exmar Marine NV
Christine Verhaert, Director